IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JANICE BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:05-CV-236-W |
| ) | (WO) |
| CITY OF OPELIKA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on the defendant's Motion for Summary Judgment (Doc. # 15), filed on February 27, 2006. For reasons to be discussed, the Court finds that the motion is due to be GRANTED.

**I. FACTS AND PROCEDURAL HISTORY**

The facts contained in the parties' evidentiary submissions, viewed in a light most favorable to the non-movant, show the following:

Plaintiff Janice Brown ("Brown"), a black female, was employed with the City of Opelika as a magistrate in the municipal court clerk's office for more than nineteen years. Her supervisor was the Clerk of Court, Elaine Kirby ("Kirby"), a white female. The City of Opelika employed two other magistrates, Brenda Stinson ("Stinson") and Mary Jones ("Jones"), also black females. Judy Sims ("Sims"), a white female, was also employed in the clerk's office as Kirby's assistant.

Brown's job duties included handling daily accounting procedures for the money taken in by the clerk's office, as well as processing warrants. The procedure for processing warrants was as

follows: A person wishing to make a complaint would come into the clerk's office and sign a warrant in the presence of a magistrate. The magistrate would acknowledge the person's signature and then "magistrate" the warrant, or file it in preparation for service by the police department. As magistrates, Brown, Stinson and Jones all had similar responsibilities. Sims, as Kirby's assistant, had different job duties. Brown testified that she believed that Sims received preferential treatment because Sims was not required to help Brown at the front desk or answer the phone during busy court times. Additionally, Sims had access to Kirby's office and had a magnetic key to the building. When Kirby was not at work, Sims would sit in Kirby's office and enter information from court proceedings into Kirby's computer. Brown stated that she perceived that Sims was treated differently than the magistrates.

In late 2003 and early 2004, Brown and Kirby were having difficulty working together. On February 9, 2004, Brown told Kirby that she wanted to make a complaint of "harassment" because she believed Kirby was speaking to her in an abusive tone. A meeting was arranged with the mayor which Brown states she believed was for the purpose of her making an official complaint about Kirby. However, in the meeting held on February 12, 2004, with Kirby, Lisa McLeod ("McLeod"), the director of human resources for the City of Opelika, and Barbara Patton ("Patton"), mayor of Opelika, Brown was issued a written disciplinary warning for insubordination. Brown appealed the disciplinary action, and a second meeting was held on February 18, 2004, with Brown, Brown's attorney, McLeod and Patton. Brown submitted a written statement to the mayor, listing complaints concerning Kirby's behavior toward Brown. The written statement does not mention race nor does it make any allegations of racial discrimination. At the second meeting, Patton reduced Brown's written warning to an oral warning.

In June 2004, an Opelika resident was wrongfully arrested as the result of an incorrect warrant. The resident had paid the fine associated with a traffic ticket, but a warrant was mistakenly issued for "failure to appear" on her court date. The mistake was discovered after she was arrested at her home and brought to the city jail; she was then released. An investigation revealed that Brown's signature was on the incorrect warrant, and that the warrant contained Stinson's signature, indicating that Stinson had sworn that the facts stated on the warrant were correct. Stinson denied signing the warrant, and a handwriting expert confirmed that she had not signed her name to the incorrect warrant. The results were inconclusive as to who signed Stinson's name; Brown admits, however, that she signed her own name and magistrated the warrant. While investigating this incident, McLeod testified that she discovered two traffic citations that had been deleted from the computer system, apparently by Brown. Brown denies deleting any citations, but computer records confirmed that the user identification of the person logged on at the time belonged to Brown. She has not offered evidence to contradict this. Additionally, McLeod discovered eight additional incorrect warrants that had been processed by Brown in a three-month period. Upon being presented with these findings, Patton decided to terminate Brown's employment. Brown was notified of this decision on July 1, 2004 and requested a hearing. On July 8, 2004, a hearing was conducted at which Brown, her husband, her brother, McLeod and Patton were present. On July 14, 2004, Patton confirmed her decision to terminate Brown. Brown appealed, and a due process hearing was conducted before the City Council on September 7, 2004. Brown was represented by an attorney and was allowed to present evidence in her favor. The Council voted unanimously to uphold the termination.

Brown filed a complaint with the EEOC, received notice of her right to sue from that agency,

3

and filed a complaint in this Court on March 14, 2005, alleging a claim of retaliation under Title VII and 42 U.S.C. § 1983. The City of Opelika filed its Motion for Summary Judgment on February 27, 2006, and Brown filed a response to the motion on March 21, 2006. The City of Opelika filed its reply on March 29, 2006.

## II.  JURISDICTION AND VENUE

Because this case arises under 42 U.S.C. § 2000e *et seq*. and 42 U.S.C. § 1983, the Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Additionally, the Court finds that the record includes adequate allegations supporting personal jurisdiction and venue.

## III.  SUMMARY JUDGMENT STANDARD

Under Rule 56 (c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories,

4

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the court must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c).

## IV. DISCUSSION

Brown brings claims under both Title VII and 42 U.S.C. § 1983. Title VII states, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Section 1983 prohibits "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting under color of state law. 42 U.S.C. § 1983. However, "[a] § 1983 claim cannot be predicated on allegations of retaliation; Title VII . . . provides the exclusive remedy for such claims." *Gamper v. State of Ala. Dept. of Corr.*, 968 F.Supp. 1483, 1485 n.1 (M.D. Ala. 1997). Brown's § 1983 claims, therefore, fail as a matter of law.

A plaintiff may prove a *prima facie* case of retaliation by showing that "(1) [s]he engaged

in statutorily protected activity, (2) [s]he suffered an adverse employment action, and (3) there is some causal relation between the two events." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (citations omitted). "To establish that a plaintiff engaged in statutorily protected expression, . . . a plaintiff must show that she 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Phillips v. Hibbett Sporting Goods, Inc.*, 329 F. Supp. 2d 1280, 1292 (M.D. Ala. 2004) (quoting *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002)). The Eleventh Circuit has emphasized that "a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that [s]he subjectively (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was objectively reasonable in light of the facts and record presented." *Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir. 1997). Additionally, "the protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those . . . who informally voice complaints to their superiors or who use their employers' internal grievance procedures." *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). "The causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (citations omitted).

In the present case, there is no dispute that Brown suffered adverse employment action when she was terminated. The City of Opelika contends, however, that Brown did not engage in statutorily protected activity, and therefore has not met her burden of establishing a *prima facie* case. The Court agrees. First, Brown has not established that she made a complaint about an *unlawful* employment

6

practice.  Brown asserts that when she told Kirby that she wanted to make a complaint of "harassment," this pronouncement qualified as protected activity.  (Brown Depo. at 111, 166.)  However, Brown testified that she never used the word "race," nor did she indicate to Kirby, McLeod or Patton that she believed she was the victim of illegal discrimination.  (Brown Depo. at 166.)  Her complaints were limited to claims that Kirby treated her disrespectfully by speaking to her in an abusive tone and acting in a rude manner toward her in front of other people.  (Def.'s Ex. G.)  Brown never specified in her complaint that she believed the "harassment" was racial in nature.  (*Id*.)  She has not established that those to whom she made the complaint had any way of knowing that she believed Kirby was engaging in racial discrimination.

  Second, Brown has not demonstrated that she had an objectively reasonable belief that she was the victim of racial harassment. According to Brown's complaints, she was subjected to an unpleasant working environment.  However, the key inquiry is not whether Brown was treated well, or even fairly, by her supervisor.  The only relevant question is whether Brown was treated *differently* because of her race.  Brown has testified that she believed Kirby treated all of the employees under her supervision badly, including Sims, who is white.  (Brown Depo. at 210.)  Further, Brown admits that she never heard Kirby use racially derogatory language, nor did she know of anyone else who had heard Kirby make racially derogatory comments about Brown.  (Brown Depo. at 84-85.)  Finally, although Brown asserts that Kirby treated Sims differently than Brown, it is undisputed that Sims had a different position than Brown.  Brown admits that Sims' job was to assist Kirby, not to perform the same duties as a magistrate; therefore, Sims and Brown were not similarly situated.  (Brown Depo. at 181, 200.)  Brown has not established that the perceived preferential treatment she claims Sims received had anything to do with race, especially in light of

the fact that Brown and Sims had different job duties.

Because Brown has not proven that she engaged in statutorily protected activity by complaining about an unlawful employment practice, she has failed to meet the first prong of a *prima facie* case of retaliation.  Therefore, the Court concludes that Brown has not established that a genuine issue of material fact exists in this case.

## V.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

1. The defendant's Motion for Summary Judgment (Doc. # 15) is GRANTED.

2. The parties' Joint Motion for Leave to Conduct Face to Face Conference Following Ruling on Motion for Summary Judgment (Doc. # 24) is DENIED as MOOT.

3. The clerk is DIRECTED to remove this case from the July 10, 2006 trial docket.

A final judgment will be entered in accordance with this order.

DONE this the 30th day of May, 2006.

                                           /s/  W.  Keith Watkins
                                    UNITED STATES DISTRICT JUDGE